(C. D. 345)

B. R. Anderson & Co. *v.* United States

United States Customs Court, Third Division

(Decided June 3, 1940)

*Lawrence & Tuttle (George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before Cline, Evans, and Keefe, Judges

Evans, Judge: This is an action against the United States in which the plaintiffs seek to recover a sum of money claimed to have been illegally collected and paid as customs duties upon an importation which entered the port of Seattle from Japan. It was invoiced as "salted vegetable 'Rakkyo.'" The collector assessed duty at the rate of 35 per centum ad valorem under the provisions of paragraph

775 of the Tariff Act of 1930, presumably as vegetables, pickled or packed in salt or brine. The importer claims that the merchandise is dutiable at 25 per centum ad valorem under the same paragraph as "onions, pickled or packed in brine," by virtue of the trade agreement between the United States and the Netherlands (T. D. 48075). Said trade agreement provides, among other things, for a rate of duty of 25 per centum ad valorem under said paragraph for "onions, pickled, or packed in brine."

When this case was called for trial the importer introduced a jar of some vegetable in a liquid, which he said represented the importation, and it was received without objection as Exhibit 1. A Japanese witness gave some unsatisfactory testimony as to how his mother packed an article in Japan that looked like the imported article. Later on he was asked the following questions and gave answers as noted:

Now I just want to know, please, Mr. Tsutakawa, about the packing first.

Judge CLINE. How it is made, he means.

Mr. TUTTLE. Yes.

Q. But you tell it as you wish. Don't let me interrupt.—A. About May or June is the season, and you just take the bulb of the onion, the roots, I mean, and——

Q. Go a little slower, and I will ask you questions. You take the bulb of the thing you have just called an onion; and do they cut the top off, that is, did your mother?—A. Yes.

Q. And then what do they do with it?—A. Clean like the dry onion.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

Q. And then what do they do after cleaning it?—A. Oh, just salt.

Q. Just salt. Now, how do they apply the salt? What do they do with salt?—A. Well, I don't get that.

Q. Let me ask you a question if I may. Do they put the peeled or cleaned bulbs into any tub or any receptacle?—A. Yes.

Q. They put them in a container?—A. Container.

Q. Water-tight container?—A. A jar.

Q. A jar?—A. Yes.

Q. And then you spoke a moment ago about salt. What do they do with salt?—A. I think they put it right in the salt water; that is all.

Q. They put the onion into salt water?—A. Yes.

Q. About how much salt?—A. Well, let me see; about a pound to every 5 gallons.

Q. And just plain fresh water?—A. Yes, fresh water, yes.

Later on he was asked the following question which possibly he didn't understand:

Q. &ast; &ast; &ast; Have you ever seen the plant we have here in this jar growing, that is, like those?—A. They are more like green onions.

Q. No, have you ever seen them growing?—A. No.

He later testified that his mother had grown them and that he had seen them in his mother's yard. The attorney for the plaintiffs then

apparently produced two articles, presumably leeks, which were not marked for identification but about which the witness was interrogated, and some articles which the witness said were fresh onions but which were not identified or produced in evidence. Thereafter the following testimony was given:

Q. I have here what I think are fresh onions. Is that what you think they are, too, fresh onions?—A. The leaves are more like a fresh onion.

Q. What was the word you used in between there, the leaves?—A. Yes.

Q. Of the rakkyo are more like the fresh onion?—A. Yes.

Q. What is the bulb like?

Mr. TUTTLE. Is that the proper word, your honor?

Judge CLINE. I don't think he would understand the word anyway.

By Mr. TUTTLE.

Q. Onions?—A. Yes.

Q. Then what I want you to tell us is whether the rakkyo is like the thing which you call a green onion or whether it is like a leek.—A. Not that.

Mr. WEEKS. Not like what?

By Mr. TUTTLE.

Q. These leeks?

Judge CLINE. Is it like the onion?

The WITNESS. Yes, green onion.

By Mr. TUTTLE.

Q. You said the bulb was like the green onion. Is the top like the green onion? By top I mean the green part.—A. The bulb is more——

Q. The leeks, you might call it.—A. The top is more like green onions.

Q. More like the green onions?—A. Yes.

Mr. TUTTLE. That is all.

Mr. WEEKS. No questions.

The sample produced by the importer, Exhibit 1, bears a label in writing "Rakkyo zuke." The Japanese-English dictionary by Hepburn published in 1903 gives the following definition for "Rakkyo":

A vegetable of the garlic class, scallion. Allium bakeri.

The same authority gives the Japanese name for onion as "Negi, hitomoji." and the name for leek is given as "Nira." So according to this authority Rakkyo is not an onion. We prefer to follow the common meaning or definition of "Rakkyo" as given in this standard dictionary rather than the uncertain testimony of the witness produced on the part of the plaintiffs, as to the English definition of this commodity.

We therefore find that the presumption attaching to the collector's classification of this commodity as vegetables, pickled, or packed in salt or brine, under paragraph 775, *supra*, has not been overcome and plaintiffs' claim that it is entitled to the reduction in duty granted to "onions, pickled, or packed in brine" under the terms of the trade agreement between the United States and The Netherlands, is overruled. Judgment will be rendered accordingly. It is so ordered.